## Josef Hladovec v. Frank Paul, et al.

### Gen. No. 12,193.

1. CORPORATE STOCK—*when agreement limiting issue of, valid.*
An agreement is valid by which the original subscribers to capital
stock constitute themselves trustees and undertake that neither
themselves nor any subsequent subscriber to the stock of such cor-
poration shall be entitled to and shall receive more than a stipu-
lated number of shares.

Bill for injunction. Appeal from the Circuit Court of Cook
County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in
the Branch Appellate Court at the March term, 1905. Reversed and
remanded with directions. Opinion filed February 20, 1906.

**Statement by the Court.** This is an appeal from a
decree of the Circuit Court perpetually enjoining appellant
from asserting any claim to 720 shares of the capital stock
of the Garden City Brewery, a corporation, and also re-
straining him from prosecuting a petition for *mandamus*
against said corporation and its officers to compel them to ac-
cept $72,000 in payment of 720 shares of the capital stock of
said corporation at its par value, which shares of stock are
claimed by appellant on the ground that he was an original

subscriber therefor and liable to pay to the corporation the amount of said subscription.

The bill of complaint is brought by 76 stockholders of said corporation, against the corporation itself, appellant, two others who with appellant were original subscribers to the capital stock and against the president, treasurer and secretary of the corporation who had been made respondents to a petition for *mandamus* filed by appellant against the corporation and its officers. The material averments of the bill are in substance as follows: February 24, 1891, the Josef Hladovec Brewing Company was organized under the laws of Illinois with a capital stock of $150,000 represented by 1500 shares of stock, the par value of which was fixed at $100 per share. Its object was to manufacture and sell beer, its duration ninety-nine years and its principal office in the city of Chicago. Appellant Hladovec subscribed for 1,000 of these shares and two other parties, Vaclav Topinka and Vaclav Hodek, each subscribed for 250 of the remaining 500 shares of capital stock. The three elected themselves directors and the corporation proceeded to business. It acquired a brewing plant and began to manufacture and sell beer. Apparently the business was not successful for shortly thereafter the brewing plant was disposed of and the corporation retired from business.

In the year 1901 forty-one of the appellees, complainants herein, together with the appellant Hladovec, all of whom were engaged in selling beer at retail which they were in the habit of purchasing from various brewing companies, determined to organize for themselves a corporation to manufacture and sell beer, the idea being that they could thus obtain beer for their retail business at cheaper rates. They formulated a plan, in accordance with which the capital stock of the new corporation should be equally divided between them and such other persons as from time to time they might permit to become stockholders, the intention being that no stockholder should acquire more than ten shares of stock and that the stockholders should all be persons engaged in the sale of beer at retail. Before application had been made to

the Secretary of State for a license to organize the proposed corporation, appellant Hladovec, it is alleged, represented to his associates in the enterprise that it was unnecessary to create a new corporation because the charter of the Josef Hladovec Brewing Company could be adapted to the purpose they had in view; that he was the owner or had control of all the subscriptions to its capital stock and that the original subscribers would release all rights; that in lieu of the shares of stock being issued to said original subscribers, Hladovec, Topinka and Hodek, certificates might issue in lots of ten shares each to the new associates in said enterprise, who paid into the treasury of the corporation $1,000, and to such other persons as might thereafter be permitted to become stockholders of said corporation until the entire capital stock of said corporation should be issued. The proposition to revive the old company was accepted, and it was agreed *inter alia* that each person thereafter permitted to become a stockholder should pay into the treasury for each ten shares of stock issued to him such sum not less than $1,000 as might be from time to time fixed by the board of directors of said corporation. In accordance with the agreement the name of the corporation was changed from Josef Hladovec Brewing Company to Garden City Brewery, the number of its directors was increased from three to eleven, Topinka, Hodek and appellant Hladovec released their rights respectively under their original subscription to the capital stock and agreed that neither of them would assert any right nor claim any right to have certificates issued to them under their original subscriptions and that the stock of the corporation should be issued thereafter and disposed of in accordance with the agreement between the parties.

The parties to the agreement proceeded with the enterprise. 780 shares of the stock of the corporation in all have since been issued. Of this number 520 were issued to and paid for by stockholders at the rate of $100 per share, 140 at the rate of $125 per share, and 100 at the rate of $150 per share and 20 at the rate of $200 per share, making in all $88,500 which has been paid into the treasury of the cor-

poration as a part of the capital stock of the company since
its reorganization and under and in accordance with the
agreement then made to which appellant Hladovec was a
party.    Since the election of the first board of eleven directors
the corporation has purchased real estate in the city of Chi-
cago, has erected a brewing plant thereon and carried on the
business of manufacturing and selling beer to its stockholders
and others.    The business has been exceedingly profitable
and advantageous to the stockholders, both on account of the
earnings of the company and from the fact that the stock-
holders by reason of their ownership of stock have been able
to purchase beer for their retail trade at much lower prices
than they would otherwise have been compelled to pay.    The
total indebtedness of the corporation does not exceed $38,000,
$37,000 of which represents outstanding bonds of that
amount not yet due or payable.    The fair cash value of its
assets exceeds $200,000 and it is asserted that for the pur-
poses of its stockholders who are engaged in selling beer at re-
tail the stock is in fact worth several times its par value.
Appellant Hladovec has participated either as a director or
otherwise in the management of the corporation from the time
of reorganization and has held out to each of the complainant
stockholders that the agreement that each stockholder should
be the owner of ten shares and no more was valid and bind-
ing and that neither he nor any other of the stockholders had
any right to acquire in any manner or form more than ten
shares of the capital stock.    It is alleged that strict ad-
herence to this agreement is of the utmost importance to
complainants and other stockholders interested in the success
of the business and that a departure from its terms would
be detrimental to the stockholders' interests and tend to de-
feat the purpose for which the corporation exists.

It is alleged that on the 15th of August, 1904, appellant
Hladovec, unmindful of his agreement and desiring to repudi-
ate it, filed a petition for *mandamus,* claiming that under
the original subscription and by assignment of the rights of
Topinka and Hodek, he had become entitled to have issued
to him in person the entire unissued 720 shares of the capital

Hladovec v. Paul.

stock of said corporation, having made tender of $72,000 in payment of its par value, and seeking to compel the officers of the corporation to issue said remaining shares to him.

The bill prays for an injunction restraining Hladovec from asserting any claim to or receiving or taking steps to cause to be issued to him any of the shares of stock of said Garden City Brewery other than the ten shares which he now owns, and from the further prosecution of his petition for *mandamus;* prays that the court declare and decree that neither Hladovec nor any person claiming under him or the other original subscribers to the capital stock of the Josef Hladovec Brewing Company have any right, title or interest in or to any portion of the unissued capital stock of said corporation; and that the said Hladovec and all persons claiming under him or the other original subscribers be required to execute and deliver to the Garden City Brewery proper instruments in writing releasing to said corporation all claims of every kind and character to the 720 shares of stock in controversy.

To this bill the defendants Hladovec, Topinka and the executor of the will of Hodek, deceased, filed a joint and several demurrer. The demurrer having been overruled, appellant Hladovec elected to abide by it. Defendants Topinka and the executor of the last will and testament of Hodek, deceased, having filed disclaimers of all right, title or interest in or under the original subscriptions in question, the court entered a decree finding the facts substantially as alleged in the bill of complaint. By the decree Hladovec is restrained from asserting any claim of any kind or character to or receiving or taking any steps to cause to be issued to himself the 720 shares of capital stock in controversy or any part thereof under or by virtue of the original subscription therefor, and from the further prosecution of the petition for *mandamus* referred to; and Hladovec is released and discharged from further liability to the corporation on account of his original subscriptions to its capital stock.

From this decree the present appeal is prosecuted.

JOHN S. COOPER, for appellant.

SIDNEY S. POLLACK, EDWARD J. NOVAK and HIRAM T. GILBERT, for appellees.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The agreement upon which the controversy in this case arises is stated by appellant's counsel to be "stripped of all immaterial incidents   *   *   *   in substance as follows:

" 'Appellant had subscribed for all the stock of the corporation. None of the stock had been issued. He agreed with certain of the appellees (who were acting for themselves and all future purchasers of the stock of the corporation) that he would, and did, release all his right to any of the stock subscribed for by him, except ten shares, and further agreed with said certain number of appellees that the corporation should issue to each of them ten shares at par, and to such other persons respectively as the board of directors might thereafter permit to become stockholders of said corporation, in lots of ten shares each, and at not less than par, and as much more as the directors should determine from time to time until the entire capital stock of said corporation should be thus issued; and that, in the meantime, the subscribed and unissued stock should continue to stand in the name of appellant. No time was fixed during which this agreement should remain in force, except that it should continue until all of the subscribed stock should have been issued.' "

Appellant Hladovec was an original subscriber to two-thirds of the stock of the Josef Hladovec Brewing Company organized in 1891, and he subsequently acquired the rights of the other two subscribers. That corporation began business, but evidently the business was not successful, for it was shortly thereafter abandoned and the plant disposed of, Whether or not the capital or any of it was paid in does not clearly appear. It is said that the corporation acquired a brewery plant and carried on the business of manufacturing and selling beer, "with means provided by the said Josef Hladovec." How this "means" was provided, whether by a loan from Hladovec to the corporation or by payment into the treasury of the company in whole or in part of the

Hladovec v. Paul.

amount subscribed by Hladovec and two fellow subscribers, does not appear. Nor does it clearly appear whether certificates of stock were or were not then issued. The bill alleges that Hladovec subsequently released his rights as an original subscriber and does not in terms state that any of the stock of the company under the original corporate name was issued. At the time, however, when the agreement in controversy was made, the company had gone out of business. Its charter seems to have been its only asset. When Hladovec with others formed the plan of organizing a new corporation, the stockholders of which should all be retail dealers in beer, the purpose being primarily to manufacture for themselves the beer for their own retail trade, the old corporation and its charter had no place in their plans or purposes. It was after the essential features of the plan had been formulated that Hladovec himself suggested the existence of the old charter and offered and agreed to eliminate all his interest of every name and nature and that of the other original subscribers growing out of their subscriptions to the capital stock. It would appear that this interest was merely nominal at best. The corporation had no assets, no business. As a going corporation it was defunct. According to the bill, appellant agreed to release to his new associates and stockholders and did release to them all rights to any of the stock subscribed for by him or any one else prior to that time, except the ten shares which by the agreement he was to receive and hold on the same terms and conditions as other incoming stockholders. He authorized and empowered the directors elected by the new stockholders, himself included, absolutely to control thereafter the issue by the corporation of all the capital stock to such persons as they might deem proper to admit as stockholders, in lots of ten shares each at not less than par and as much more as the directors might from time to time determine. This power the directors were to exercise until the entire capital stock of the corporation should be thus issued. This contract was made with certain of the appellees "acting for themselves and all future purchasers of the stock." Under that contract all the present

stockholders including Hladovec himself acquired the ten shares of stock which each of them holds. For three years, as a stockholder and as a director, appellant Hladovec acquiesced in and ratified this agreement in every way. Meanwhile the corporation which under his former management had been a failure became under the new regime a remarkable success. Its stock doubled in value. More than half of it had been sold and the money received therefor, $88,500, was paid with his full concurrence into the treasury of the association. After all this he now discovers that the agreement under which all the parties have acted was illegal and that it is his duty to claim for himself the 720 shares of stock remaining unsold, worthless at the time he made the agreement, now valued at more than twice their full par value, that is more than $144,000. He demands that these undisposed of shares shall be issued to him upon his paying their par value of $72,000. The ground of this claim is that he is personally liable to the corporation or its creditors for the amount of his original subscriptions to the unissued stock. He asks now to be allowed to repudiate his own agreement, that he may possess himself of a small fortune, to which in equity and good conscience he has no more claim than at least seventy-eight other stockholders.

The first of the alleged legal grounds upon which appellant's counsel urges that the decree against him should be reversed is that the effect of the agreement between appellant and the forty-one other persons who constituted with him the first stockholders under the reorganization, was to release appellant from his liability to the corporation on his original subscription and to relieve the corporation from obligation to issue such stock to him or his assigns. It is said that such agreement to release appellant from stock liability is illegal and void. We do not understand the agreement to have had such effect any more than in case of any sale or transfer of unpaid stock. It is doubtless true as argued by appellant's counsel that the subscriber to capital stock of a corporation is liable to the corporation for the amount of such subscription and that such liability may be enforced for the benefit of

stockholders.   The express agreement here was, however, as appellant's counsel states, that "until the entire capital stock of said corporation should be thus issued,   *   *   *   the subscribed and unissued stock should continue to stand in the name of appellant."   But the effect of the agreement was that while the unissued stock was to stand nominally in appellant, he held it thereafter in trust for the other stockholders and as the agreement provides under the control of the directors of the corporation.   While as to the corporation, his liability as a subscriber for unpaid stock continues under the statute (R. S. chap. 32, sec. 8) he shares such liability with the other stockholders whose trustee he has become. His agreement with the other stockholders expressly provides that the management of the trust fund consisting of the unissued shares shall be in the directors of the corporation, and this control appears to have been exercised as agreed upon. By the agreement appellant in effect made an equitable assignment and transfer of the unissued stock to the other parties to the agreement, the nominal right only as original subscriber remaining in appellant.   His liability and that of the stockholders was and is we think the joint liability imposed by statute on original subscribers to capital stock not fully paid which has been transferred to a subsequent holder, —both parties remain liable until the stock is paid for.   (R. S. chap. 32, sec. 8 *supra*.)   The agreement thus made, acted upon and ratified by all the parties thereto, is binding upon all alike.   Neither the directors nor the corporation itself were parties to the agreement, and while apparently the directors have issued stock when called upon as the agreement provides, they have not undertaken to release appellant or anyone else from statutory liability, under the subscription. It is doubtless true as appellant's counsel asserts that "a corporation has no legal capacity to release an original subscriber to its capital stock from payment to it in whole or in part, and that any arrangement with him by which the company, its creditors or stockholders, shall lose any part of that subscription is *ultra vires* and a fraud upon creditors and the co-subscribers."   Morgan v. Struthers, 131 U. S., 246–254;

Coleman v. Howe, 154 Ill., 458–467. In the case at bar no such arrangement has been made. We do not agree with counsel that the agreement is an option agreement nor that it would be void as such. See Kantzler v. Bensinger, 214 Ill., 589–596. Under the facts in the case at bar McNulta v. Corn Belt Bank, 164 Ill., 427, cited by appellant's counsel, is not in point.

Nor do we concur in appellant's contention that the agreement is not binding upon appellant equally with the other stockholders, for want of consideration. The obligations and benefits were mutual and furnished to each party a consideration for the agreements of the other.

Finally it is argued the agreement is not obligatory because it fixes no time within which the unissued shares shall be sold or disposed of, because the ownership by any one person is limited to a fixed number of shares, and because the corporation it is said "remains meanwhile in substantial ownership of its subscription to its own stock." We find no difficulty such as counsel seems to discover. If the corporation should need the money and demand that the unissued stock be paid for and taken, such demand will probably be made upon appellant and the other stockholders for whom he holds in trust the rights of a subscriber. While it is true that as between themselves the stockholders have agreed that the stock in controversy shall be issued in lots of ten shares at par, the corporation is not a party to such agreement nor so far as we can discover bound by it. Neither does the corporation own the shares in dispute. The agreement does not purport to limit in any way the transfer of the stock after it has once been issued to and held by any stockholder. If it did, and was as appellant contends unlawful in that it sought to limit the ownership of the number of shares of stock to be held by any one person, appellant would thereby gain no additional rights to the stock in controversy. We need not follow counsel in argument relating to matters not properly pertaining to the actual controversy here involved.

The main purpose of the bill is to restrain appellant from asserting at law or otherwise his alleged claim to have the

remaining unissued 720 shares of stock issued to himself or for his benefit. The injunction properly restrains him in this respect. The decree is correct also apparently in its findings as to Topinka and Hodek. It is evident, however, from what has been said, that it is erroneous in finding that appellant has no interest in the stock which he holds as trustee nor any interest other than to the ten shares actually issued and standing in his name. He has the same interest in the unissued stock as the other individual stockholders, no more and no less. So far also as the decree undertakes to release and discharge appellant from liability to the corporation or any person claiming by, through or under it on account of his subscriptions to the capital stock, which remain unpaid, or relieves him from the statutory liability, imposed upon a subscriber in common with those to whom he has transferred his beneficial interest, to the extent of the amount that may be unpaid, it is likewise erroneous.

The decree of the Circuit Court will therefore be reversed and the cause remanded with directions to enter a new decree in conformity with this opinion.

*Reversed and remanded with directions.*